UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MATTHEW HARRAH,

      Plaintiff,

v.                                                              Case No: 8:16-cv-293-T-JSS

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

## ORDER

Plaintiff, Matthew Harrah, seeks judicial review of the denial of his claim for a period of disability and disability insurance benefits. As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the decision is affirmed.

## BACKGROUND

**A.    Procedural Background**

Plaintiff filed an application for a period of disability and disability insurance benefits on May 28, 2014. (Tr. 79, 174-175.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 93-96, 100-105.) Plaintiff then requested an administrative hearing. (Tr. 106.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 25-67.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits. (Tr. 9-20.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied. (Tr. 1-7.) Plaintiff then timely filed a complaint with this Court. (Dkt. 1) The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

**B.      Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1962, claimed disability beginning on May 13, 2014.  (Tr. 79, 174-175.)  Plaintiff has a high school education.  (Tr. 190.)  Plaintiff's past relevant work experience includes work as a guard in a juvenile detention facility and automobile service advisor. (Tr. 19, 191.)  Plaintiff alleged disability due to post-traumatic stress disorder ("PTSD"), degenerative disc disease, and high blood pressure.  (Tr. 189.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since May 13, 2014, the alleged onset date.  (Tr. 14.)  After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease and high blood pressure.  (Tr. 14.)  Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 17.)  The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. Part 404, Section 1567(b).  (Tr. 17.)  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not fully credible.  (Tr. 18.)

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined that Plaintiff could perform his past relevant work.  (Tr. 19.) Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled.  (Tr. 20.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C.

- 3 -

§ 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal.  *Keeton*, 21 F.3d at 1066.  The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ failed to address treating physician Dr. Gorman's opinion; (2) the ALJ failed to properly consider Plaintiff's PTSD; and (3) the ALJ failed to properly consider the disability rating provided by the Department of Veterans Affairs ("VA").  For the reasons that follow, none of these contentions warrant reversal.

- 4 -

## A.      Opinion of Treating Physician Dr. Gorman

Plaintiff contends that the ALJ failed to address a medical opinion of treating psychiatrist Dr. Francis Gorman.  (Dkt. 14 at 13.) Specifically, Plaintiff argues that the ALJ failed to address and give weight to Dr. Gorman's May 2014 assessment of Plaintiff, wherein Dr. Gorman stated that Plaintiff was unable to continue working due to his performance issues and PTSD.  (Dkt. 14 at 14.)

Medical opinions are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity" of the claimant's impairments, including the claimant's symptoms, diagnosis and prognosis, the claimant's ability to perform despite impairments, and the claimant's physical or mental restrictions.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178–79 (11th Cir. 2011) (internal quotation and citation omitted); 20 C.F.R. § 404.1527(a)(2).

A treating physician's opinion is "given substantial or considerable weight unless good cause is shown to the contrary" and an ALJ must specify the weight given to the treating physician's opinion. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).  However, there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his or her decision, so long as the decision is not "a broad rejection" that leaves the court with insufficient information to determine whether the ALJ considered the claimant's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).

Thus, "[t]o the extent that the administrative law judge erred by failing to state with particularity the weight assigned to [treating physicians'] medical opinions, the error is harmless" if it does not "affect the administrative law judge's ultimate determination." *Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) (finding that the ALJ's decision was supported

by substantial evidence and, therefore, the ALJ's failure to explicitly state the weight afforded to treating physicians' testimony was harmless error); *Tillman v. Comm'r, Soc. Sec. Admin.*, 559 F. App'x 975, 975–76 (11th Cir. 2014) (recognizing harmless error analysis in the context of an ALJ's failure to address a treating source's opinion and concluding that "when the ALJ's error did not affect its ultimate findings, the error is harmless, and the ALJ's decision will stand"); *Caldwell v. Barnhart*, 261 F. App'x 188, 191 (11th Cir. 2008) (finding that the ALJ's failure to state the weight given to a physician's opinions was harmless error because the opinions did not otherwise contradict the ALJ's findings); *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (finding harmless error for the ALJ's failure to explicitly state what weight he afforded to a number of physicians' medical opinions when the opinions did not directly contradict the ALJ's findings).

Plaintiff argues that the ALJ erred by failing to address Dr. Gorman's May 12, 2014, assessment of Plaintiff because the assessment qualifies as a medical opinion.  (Dkt. 14 at 14.)  In the treatment note, Dr. Gorman states that Plaintiff asked the doctor to complete a medical certification for his ability to perform physical duties for his job as a juvenile detention officer.  (Tr. 941.)  Dr. Gorman declined, explaining he was not qualified to assess Plaintiff's physical abilities.  (Tr. 941.)  Dr. Gorman further stated that given Plaintiff's "problematic work history," he felt that Plaintiff was unable to continue to work.  (Tr. 941.)   Dr. Gorman explained that Plaintiff's "problematic work history" was based on a letter from Plaintiff's supervisor, wherein the supervisor stated Plaintiff had been absent from his position for some time.  (Tr. 941.)  Plaintiff agreed with Dr. Gorman and stated he would send in a letter of resignation and apply for social security benefits.  (Tr. 941.)

The Commissioner argues that the ALJ was not required to weigh Dr. Gorman's May 12, 2014, opinion because it is not a medical opinion, but rather a finding reserved to the

Commissioner.  The Court agrees.  Under 20 C.F.R. Section 404.1527(d), opinions addressing whether a claimant is disabled, whether a claimant's impairments meets or equals an impairment in the Listings, a claimant's RFC, and the application of vocational factors are reserved for the Commissioner.  Opinions on these issues are not medical opinions.  20 C.F.R. § 404.1527(d). Rather, they are administrative findings that are dispositive of a case.  *Id*.  Opinions on issues reserved to the Commissioner are not given any special significance.  *Id*.  Further, 20 C.F.R. Section 404.1527(d)(1) explicitly states that "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that you are disabled."  Therefore, Dr. Gorman's May 12, 2014, opinion that Plaintiff was unable to continue to work is not a medical opinion, but an administrative finding reserved to the Commissioner. *Hutchinson v. Astrue*, 408 F. App'x 324, 328 (11th Cir. 2011) ("Additionally, whether Hutchinson could hold a job is a vocational opinion, not a medical one. That question is reserved to the ALJ."); *Kelly v. Comm'r of Soc. Sec*., 401 F. App'x 403, 407 (11th Cir. 2010) (stating a doctor's opinion on a dispositive issue reserved for the Commissioner, such as whether the claimant is unable to work, is not considered a medical opinion and is not given any special significance, even if offered by a treating source); *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987) ("The opinion of the treating physician regarding disability or inability to work may be discounted if it is unsupported by objective medical evidence or is merely conclusory.").

Plaintiff concedes that Dr. Gorman addressed an issue reserved for the Commissioner, but asserts that the ALJ was still required to consider and weigh Dr. Gorman's May 12, 2014, opinion if it is consistent with the other evidence in the record.  (Dkt. 14 at 15.)  Indeed, Social Security Ruling ("SSR") 96-5p explains that opinions on issues reserved to the Commissioner must not be ignored:

> [T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance. Giving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.
>
> However, opinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner. If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record.

SSR 96-5P (S.S.A. July 2, 1996).

The ALJ did not explicitly address Dr. Gorman's May 12, 2014, opinion. However, in assessing the severity of Plaintiff's alleged impairments, the ALJ did consider Dr. Gorman's treatment records as a whole and addressed Plaintiff's treatment history prior to and after the alleged onset date. (Tr. 14-15.) For example, the ALJ addressed Plaintiff's treatment history with Dr. Gorman, as well as two other physicians, in 2013 and noted that Plaintiff's mental status was generally identified as normal. (Tr. 15, 968, 983, 985, 1009, 1031-1032.) Further, the ALJ specifically noted Dr. Gorman's treatment of Plaintiff in March, April and June 2014. (Tr. 15.) The ALJ explained that Plaintiff's mental status examination findings were normal other than some anxiety and "slightly" increased speech. (Tr. 15, 933, 948, 955.) For example, on April 23, 2014, approximately three weeks prior to his opinion that Plaintiff was unable to work, Dr. Gorman noted Plaintiff as calm and pleasant with an "ok" mood and slight anxiety. (Tr. 948.) On June 23, 2014, after the subject opinion, Plaintiff's mood was reported as "stable." (Tr. 933.)

Further, Dr. Gorman's May 12, 2014, opinion that Plaintiff was unable to continue working is not supported by his examination findings noted that day. Dr. Gorman noted that Plaintiff was

"somewhat anxious with good eye contact" and reported poor sleep but denied ideations of self-harm or harm to others.  (Tr. 941.)  Plaintiff's speech was noted as "slightly increased but not manic," and his mood was reported as "ok."  (Tr. 941.)  There are no findings to support Dr. Gorman's opinion, a conclusion Dr. Gorman states is based on a letter from Plaintiff's supervisor. (Tr. 941.)  Dr. Gorman does not identify any functional limitations that would prevent Plaintiff from working.  Moreover, as discussed above, the objective medical evidence does not support Dr. Gorman's May 12, 2014, opinion.  In contrast, the ALJ's decision was supported by substantial evidence.  Therefore, any error in failing to address Dr. Gorman's May 12, 2014, opinion was harmless.  *Hunter*, 609 F. App'x at 558 (finding that the ALJ's decision was supported by substantial evidence and, therefore, the ALJ's failure to explicitly state the weight afforded to treating physicians' testimony was harmless error).

**B.     Plaintiff's PTSD**

Plaintiff next contends that the ALJ's finding regarding Plaintiff's PTSD is not supported by substantial evidence.  (Dkt. 14 at 16.)  Specifically, Plaintiff argues that the medical record shows that Plaintiff suffers from anger issues and anxiety and prefers to isolate himself socially. Plaintiff asserts that given this evidence, the ALJ erred by not including mental limitations in Plaintiff's RFC assessment.  (Dkt. 14 at 16.)

"Agency regulations require the ALJ to use the 'special technique' dictated by the [Psychiatric Review Technique Form] PRTF for evaluating mental impairments."  *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005); 20 C.F.R. § 404.1520a (effective June 13, 2011). Utilization of the special technique requires separate evaluations concerning how the claimant's mental impairment impacts four functional areas: "activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation."  *Moore*, 405 F.3d at 1213–

14; 20 C.F.R. § 404.1520a(c)(3).  "The ALJ is required to incorporate the results of this technique into the findings and conclusions." *Moore*, 405 F.3d at 1213–14; *see* 20 C.F.R. § 404.1520a(e)(4).

The Eleventh Circuit has explained that "where a claimant has presented a colorable claim of mental impairment, the social security regulations require the ALJ to complete a PRTF and append it to the decision, or incorporate its mode of analysis into his findings and conclusions. Failure to do so requires remand." *Moore*, 405 F.3d at 1214; *Mills v. Comm'r Soc. Sec.*, 659 F. App'x 541 (11th Cir. 2016) (reversing the ALJ's decision because the ALJ failed to analyze one of the areas of functional limitation).  Accordingly, if Plaintiff presented a colorable claim of mental impairment, "the ALJ must either complete the PRTF or explicitly analyze the four factors within the decision." *Volley v. Astrue*, No. 1:07-CV-0138-AJB, 2008 WL 822192, *19 (N.D. Ga. Mar. 24, 2008).

Here, at step two of the sequential process, the ALJ found that Plaintiff's PTSD and mood disorder, considered singly and in combination, do not cause more than a minimal limitation on Plaintiff's ability to perform basic mental work activities and are therefore not severe.  In making this determination, the ALJ evaluated whether Plaintiff had marked restrictions of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, or repeated episodes of decompensation.  (Tr. 16.)  First, the ALJ found Plaintiff's restriction on activities of daily living to be "mild," based on Plaintiff's reports of being able to handle money, perform household chores, shop, and drive.  (Tr. 16, 213-214.)  The ALJ further considered that Plaintiff has been pursuing a four-year degree in psychology and receiving good grades during the period at issue.  (Tr. 16, 212, 215.)  Second, with regard to social functioning, the ALJ found Plaintiff to have "mild limitation."  (Tr. 16.)  The ALJ noted that the record reflects only fleeting anxiety and nervousness and more than one source has

characterized Plaintiff as pleasant.  (Tr. 16.)  The ALJ further reasoned that there is no corroborative support for Plaintiff's allegations of anger outbursts.  (Tr. 16.)  Moreover, Plaintiff was dating and attending school, which calls for some degree of social interaction, and reported that he does not need others to accompany him when he goes outside.  (Tr. 16, 83-85, 214.)  Third, the ALJ found Plaintiff to have "mild limitation" with concentration, persistence, or pace.  (Tr. 16.)  The ALJ came to this conclusion based on Plaintiff's report that he does not need reminders to tend to personal care tasks or take medication, there have been no changes in his cooking habits, and he is able to drive a car.  (Tr. 16, 213-214.)  The ALJ also reiterated that Plaintiff is doing well in school and almost never exhibited a deficit in memory, concentration, or attention during mental status examinations.  (Tr. 16.)  Fourth, and finally, the ALJ found that the record does not show that Plaintiff experienced any episodes of decompensation.  (Tr. 34.)

Unless the evidence indicates otherwise, a mental impairment will not meet the threshold requirement of being "severe" if limitations are no more than "mild" in any of the functional areas and there are no episodes of decompensation.  *See* 20 C.F.R. § 404.1520a(d)(1) ("If we rate the degree of your limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities (see § 404.1521).").  Here, substantial evidence supports the ALJ's finding.  Further, the ALJ properly concluded that because Plaintiff's medically determinable mental impairments cause no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation, Plaintiff's mental impairments are not severe.  *Beegle v. Soc. Sec. Admin., Com'r*, 482 F. App'x 483, 487 (11th Cir. 2012) ("[S]ubstantial evidence supports the ALJ's finding that [plaintiff] did not suffer from a severe mental impairment on account of his depression, but rather,

had mild impairments in his activities of daily living, social functioning, and concentration, persistence, and pace, and no episodes of decompensation of extended duration.").

Plaintiff argues that the ALJ erred by not including mental limitations in his RFC. At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv). The RFC is the ALJ's determination of the most a claimant "can still do despite [his] limitations." *Id.* § 404.1545(a)(1). To determine a claimant's RFC, an ALJ makes an assessment based on all of the relevant evidence of record as to what a claimant can do in a work setting despite any physical, mental, or environmental limitations caused by the claimant's impairments and related symptoms. *Id.* § 404.1545(a)(1), (3). The ALJ will consider the limiting effects of all the claimant's impairments, even those that are not severe, in determining the RFC. *Id.* § 404.1545(e). Ultimately, the ALJ's RFC assessment need not be identical to a particular assessment of record or incorporate precise limitations set forth by a physician. *See id.* § 404.1545(a)(3) (stating that all of the record evidence is considered in the RFC assessment). The final responsibility for deciding the RFC is reserved for the Commissioner. *Id.* § 404.1527(d)(2).

Here, when assessing Plaintiff's RFC, the ALJ found Plaintiff's testimony regarding his PTSD not credible. Specifically, the ALJ noted Plaintiff's above mental health history and questioned Plaintiff's credibility as "there is little support for a finding of a severe mental impairment, or a severe combination of mental impairments" and Plaintiff "premised his claim for disability, at least in part, on mental health issues." (Tr. 18.) Therefore, the ALJ considered the limiting effects, or lack thereof, of Plaintiff's alleged mental impairments on his RFC.

Plaintiff argues that the record shows his PTSD limits his ability to work because mood stability and anger management were listed as treatment goals at his psychiatric appointments.

(Tr. 1112, 1118, 1142-1144.)  Plaintiff also points to evidence that he prefers to isolate himself to avoid triggering his anger, displays hypervigilant behavior, and has an exaggerated startle response. (Tr. 33, 41-42, 605, 1152.)  Without citing any medical or expert opinion, Plaintiff states that this evidence suggests Plaintiff "would be a poor fit for jobs that would require him to collaborate with supervisors or coworkers or which would involve interaction with coworkers or the general public." (Dkt. 14 at 17.)  However, Plaintiff does not identify any limitations on his ability to work.  Thus, Plaintiff's argument relies on speculation and does not warrant remand.

Plaintiff next argues that the ALJ misinterpreted Plaintiff's medical records.  Specifically, Plaintiff argues that the ALJ's suggestion that Plaintiff's PTSD could not have been as serious as he claimed because he was noted as doing "ok" and "good" during his treatment appointments overlooks indications that Plaintiff has significant psychiatric symptoms.  (Dkt. 14 at 17-18.) Plaintiff points to Dr. Gorman's records in November 2012 where Plaintiff's mood was noted as "ok." (Tr. 1076.)  However, Plaintiff was also noted as experiencing racing thoughts and reduced sleep and was afraid he would "go off on somebody." (Tr. 1075.)  Plaintiff argues that the "ALJ should have given less weight" to descriptions of Plaintiff's mood and "more weight to the symptoms described in the treatment notes." (Dkt. 14 at 18.)  However, as noted above, substantial evidence supports the ALJ's findings regarding Plaintiff's alleged mental impairments.  Moreover, Plaintiff is requesting the Court to re-weigh the evidence.  To the extent that Plaintiff points to evidence which would undermine the ALJ's RFC determination, his contentions misinterpret the narrowly circumscribed nature of the court's appellate review, which precludes us from "re-weigh[ing] the evidence or substitut[ing] our judgment for that [of the Commissioner]…even if the evidence preponderates against" the decision. *Moore*, 405 F.3d at 1213 (quoting *Bloodsworth*, 703 F.2d at 1239).  This court may not re-weigh the evidence and decide facts anew and must defer

- 13 -

to the ALJ's decision if it is supported by substantial evidence even if the evidence may preponderate against it. *See Dyer*, 395 F.3d at 1210.

Plaintiff further contends that the opinions of non-examining state agency physicians Dr. Gary Buffone and Dr. Steven Wise undermine the ALJ's finding that Plaintiff's PTSD has no impact on his ability to work, and the ALJ should not have substituted his own reading of the medical evidence for the opinions of the state agency physicians. (Dkt. 14 at 19.) Plaintiff argues that both physicians noted that Plaintiff would have trouble maintaining a normal work schedule. Plaintiff further relies on the fact that Dr. Buffone and Dr. Wise's opinions are reasonably consistent with Dr. Gorman's opinions.

When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel*, 631 F.3d at 1179. The ALJ must consider the findings and opinions of non-examining state agency medical consultants, who are considered experts in the context of Social Security disability evaluation. 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i). The weight afforded to the opinions of state agency medical physicians varies, however, depending on the extent to which the findings are supported by clinical findings and are consistent with other evidence. *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 873 (11th Cir. 2011). Generally, the opinions of a non-treating or non-examining physician are given less weight than those of examining or treating physicians and, standing alone, do not constitute substantial evidence. *Poellnitz v. Astrue*, 349 F. App'x 500, 502 (11th Cir. 2009). Indeed, the ALJ may reject the opinion of any physician if the evidence supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).

In his decision, the ALJ assigned the state agency physicians' opinions little weight. Specifically, the ALJ noted that Dr. Buffon and Dr. Wise opined that Plaintiff's mental

impairments were severe and resulted in mild restrictions in daily living activities and moderate difficulties in maintaining social functioning and concentration, persistence or pace. (Tr. 16.) However, the ALJ also noted that neither Dr. Buffone nor Dr. Wise examined Plaintiff in reaching their opinions. (Tr. 17.) The ALJ evaluated the opinion evidence, finding that the state agency physicians failed to note Plaintiff's lack of mental health deterioration since his request for a hearing, including modest findings in 2013 and into 2014 and consistently high global assessment of functioning ("GAF") scores. (Tr. 17.) The ALJ therefore sufficiently explained why he gave the state agency physicians' opinions little weight, and substantial evidence supports his decision. *See Adams v. Comm'r of Soc. Sec.*, 586 F. App'x 531, 534 (11th Cir. 2014) (finding ALJ's decision to give little weight to the opinion of a consulting physician was supported by substantial evidence given the evidence in the medical record contradicted the physician's conclusion).

Plaintiff also contends that the ALJ should not have given any weight to Plaintiff's GAF scores in evaluating the severity of Plaintiff's PTSD. (Dkt. 14 at 20.) Citing to the *Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury*, Plaintiff argues that the Commissioner has noted that the GAF scale does not have a correlation to the severity requirements in the mental disorders listings. 65 FR 50746-01, 2000 WL 1173632 (Aug. 21, 2000). The Commissioner argues the ALJ did not weigh Plaintiff's GAF scores, but rather noted there is no evidence that Plaintiff's GAF scores deteriorated after the alleged onset date. (Dkt. 15 at 14.) Further, the Commissioner argues that the ALJ did not consider Plaintiff's GAF scores to be dispositive. The Court agrees. The ALJ did not assign Plaintiff's GAF scores a weight. Rather, while evaluating Plaintiff's PTSD, the ALJ noted that Plaintiff consistently had a GAF score of 69 in the latter half of 2013. (Tr. 15.) The ALJ further noted that Plaintiff's GAF scores were in the high sixties in 2014 prior to Plaintiff's onset date and the scores did not decrease during the spring

of 2015. (Tr. 15.) The ALJ did not rely on Plaintiff's GAF scores as dispositive evidence, and Plaintiff's argument does not warrant remand.

## C. Disability Rating

Plaintiff's last contention is that the ALJ failed to properly consider the 100% disability rating provided by the VA. Plaintiff argues that the ALJ erred in overlooking important context surrounding the VA disability rating, including Plaintiff's failure to meet his job requirements and the difference between Plaintiff's schooling and the more demanding requirements of competitive employment. (Dkt. 14 at 23-24.)

A VA's disability rating is entitled to great weight and must be considered by the ALJ in making a disability determination. *Brady v. Heckler*, 724 F.2d 914, 921 (11th Cir. 1984); *see also Kemp v. Astrue*, 308 F. App'x 423, 426 (11th Cir. 2009) (providing that an ALJ's finding regarding a VA's disability rating may be implicit). However, the rating is not binding on the Commissioner, and the ALJ is not required to state the precise weight afforded to the VA's disability determination. *Adams v. Comm'r of Soc. Sec.*, 542 F. App'x 854, 857 (11th Cir. 2013); *see* 20 C.F.R. § 404.1504 (providing that a decision by other governmental agencies regarding a claimant's disabled status is not binding on the ALJ). Further, the Commissioner may assign limited weight to an agency's determination if the agency applies a lower disability standard than that of the Commissioner. *Hacia v. Comm'r of Soc. Sec.*, 601 F. App'x 783, 786 (11th Cir. 2015); *see Pearson v. Astrue*, 271 F. App'x 979, 981 (11th Cir. 2008) (finding that the ALJ correctly explained that a claimant must satisfy a more stringent standard to be found disabled under the Social Security Act than under the VA's disability determination).

Here, the record reflects that Plaintiff served in the United States Army from October 1, 1981, to September 29, 1984, and from March 25, 2005, to July 17, 2006. (Tr. 171.) On October

11, 2013, Plaintiff's disability rating through the VA for his PTSD with mood disorder was increased from 30% to 100%, effective October 25, 2012.  (Tr. 171.)  Plaintiff was also awarded a 10% disability rating for his lumbar disc disease.  (Tr. 171.)

In his decision, the ALJ correctly described the VA rating for Plaintiff's PTSD, noting "the VA has awarded the claimant a 100-percent service-connected disability rating effective October 2012, premised on the claimant's post-traumatic stress disorder and mood disorder."  (Tr. 16.)  The ALJ reviewed the VA medical records, including the PTSD and mood disorder diagnoses and Plaintiff's treatment with VA psychologist Dr. Kelly Gorman.  (Tr. 14-15.)  The ALJ then considered Plaintiff's normal mental-status examination findings in 2013 and 2014 while Plaintiff was working full-time, attending night school, and dating.  (Tr. 17.)  The ALJ afforded the VA's disability rating little weight, stating that the VA opinion "fail[s] to note the many dispositive factors noted above (including the *lack* of a mental health deterioration since the request for hearing has been filed)."  (Tr. 17.)  The ALJ further explained his reasoning, stating:

> Moreover, one should not lose sight of the fact that the VA award came in October 2013 and established 100-percent disability effective October 2012 (Exhibit 1D), yet the claimant continued to work at a substantial gainful activity level after October 2012.  He also worked at a substantial gainful activity level after October 2013 (Exhibits 3D and 5D), and he theoretically continues to "work" towards a degree in psychology.  Such facts prove the point of the unreliability of VA disability determinations in a Social Security setting.

(Tr. 17.)

Plaintiff argues the ALJ failed to consider the decline in Plaintiff's job performance after the effective date of his VA award.  (Dkt. 14 at 22.)  For example, Plaintiff had to take medical leave for several months in 2012 due to psychiatric issues and, upon return, was reassigned from direct prisoner care to facility maintenance.  (Tr. 739, 1098.)  Further, on May 20, 2013, Plaintiff reported that his depression and anger led to problems with his employer.  (Tr. 1019.)  Plaintiff

also argues that although he is working towards a psychology degree, he attends classes only a couple days a week. (Tr. 647.) Plaintiff argues that his "schooling does not require prolonged social interaction and is not equivalent to a regular forty-hours-a-week work schedule." (Dkt. 14 at 24.) However, this argument is speculative. Further, Plaintiff testified that he typically spends eight hours a day on homework. (Tr. 58-61.)

Plaintiff argues that the ALJ's decision should be reversed because the ALJ failed to consider the above context. The Court disagrees. The ALJ closely scrutinized the VA's determination and found the record evidence inconsistent with the VA disability rating, including Plaintiff's continued work at a substantial gainful activity level after October 2012. (Tr. 17.) Further, the ALJ considered that Plaintiff continues to work towards a degree in psychology. (Tr. 17.) Given these facts, the ALJ found the VA disability determination unreliable. Therefore, the ALJ's decision to assign Plaintiff's VA disability rating little weight is supported by substantial evidence, and Plaintiff's final contention does not warrant remand. *See Ostborg v. Comm'r of Soc. Sec.*, 610 F. App'x 907, 914 (11th Cir. 2015) (finding that the ALJ properly considered the VA's disability rating and substantial evidence supported the ALJ's reasons for discounting the VA's determination when the ALJ "closely scrutinized the VA's disability decision and gave specific reasons for determining the VA's determination had little bearing on [the claimant's] case"); *Adams*, 542 F. App'x at 857 (affirming when the record showed that the ALJ "expressly considered and closely scrutinized" the VA's disability rating and "seriously considered it in making his own determination that [the claimant] was not disabled").

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1. The decision of the Commissioner is **AFFIRMED**

2. The Clerk of Court is directed to enter final judgment in favor of the Commissioner and close the case.

   **DONE** and **ORDERED** in Tampa, Florida, on February 23, 2017.


   _____
   JULIE S. SNEED
   UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record